IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**MAGPUL INDUSTRIES CORP.,**

    **Plaintiff,**

v.                                                                CASE NO: _____

**MATTHEW GOTTLIEB, RUDY'S RA1
ACCESSORIES AND DOES 1-100,**

    **Defendants.**
_____/

**COMPLAINT**

    **COMES NOW**, MAGPUL INDUSTRIES CORP. ("MAGPUL"), which complains and alleges as follows:

**JURISDICTION**

    1.    This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1121 because this action arises under the laws of the United States, and because it involves allegations regarding trademark violations.

    2.    This is a complaint for Trademark Infringement and False Designation of Origin arising under Sections 32 and 43 of the Lanham Act, 15 U.S.C. § 1114(1)(a)(Trademark Infringement) and 15 U.S.C. § 1125(a) (False Designation of Origin).

    3.    This Court has personal jurisdiction over Defendants MATTHEW GOTTLIEB ("GOTTLIEB"), RUDY'S RA1 ACCESSORIES ("RA1 ACCESSORIES") and Defendants JOHN DOE 1-100 (referred to as "the DOE Defendants") because this action

arises from GOTTLIEB'S, RUDY'S RA1 ACCESSORIES' and the DOE Defendants' (collectively referred to as "DEFENDANTS") activities that were conducted from locations in Tallahassee, Florida, which is located within the Northern District of Florida. GOTTLIEB is a citizen of the State of Florida. RUDY'S RA1 ACCESSORIES directs business activities toward and conducts business with consumers within the State of Florida and this judicial district. MAGPUL alleges on information and belief that the DOE Defendants are either residents of Florida, or that they are actively conducting business in Florida, purposefully availing themselves of the benefits and protections of Florida law.

## VENUE

4. Venue for this action properly lies in the Northern District of Florida, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to this action occurred within that district.

## THE PARTIES

5. Plaintiff MAGPUL is a Delaware corporation with its principal place of business located in Erie, Colorado. MAGPUL's business consists primarily of the design, manufacture and sale of products that are used as accessories to firearms, and its products are highly valued for their brand identity. MAGPUL has advertised a product that it plans to introduce to the market that will be sold under the tradename "MBUS Pro," which is a new product in an already existing "MBUS" product line. MBUS is an acronym for "Magpul Back Up Sight" and has no known meaning outside MAGPUL's use of the term as a trade name. MAGPUL has not yet released the MBUS Pro to the market and there are presently

no means by which production models of the MBUS Pro could be legitimately acquired or sold.

6.     MAGPUL had previously licensed the use of its mark to Magpul (Asia) Limited a company located in China, for use on various products that are sold as "airsoft" accessories. "Airsoft" is a common term used by gun enthusiasts to describe imitation weapons that are used for training or gaming. "PTS" is an acronym that stands for "Professional Training and Simulation." All PTS Magpul products that contained any MAGPUL trademark were also marked with the notation "PTS" and those products were all packaged in containers that clearly indicated that they were PTS products. Within the market, PTS Magpul products are widely known to originate from a separate manufacturer and it is widely understood that those products are sold under a different brand name than genuine Magpul products. During June 2013, MAGPUL terminated its licensing agreements with Magpul (Asia) Limited. Magpul (Asia) Limited has never produced any MBUS Pro products, nor has it ever offered any for sale.

7.     Defendant GOTTLIEB is an individual who has been involved in trafficking in counterfeit Magpul products. GOTTLIEB has used the address 3530 Apalachee Parkway, Tallahassee, FL 32311 as the location from which he is trafficking in counterfeit Magpul products. Based upon information and belief, GOTTLIEB's address is the location of an extended stay hotel.

8.     Defendant RA1 ACCESSORIES is a company offering Magpul products and PTS Magpul products for sale on its website www.ra1sales.com. Based on information and belief, Defendant RA1 ACCESSORIES has been involved in the trafficking of counterfeit

Magpul products.  Based on information and belief, Defendant GOTTLIEB operates RA1 ACCESSORIES.  Based on information and belief, GOTTLIEB also advertises products for sale through RA1 ACCESSORIES on external marketplace websites such as eBay.com, using the names "Rudy's Tactical4Less" and eBay seller name "Saigaman555".  Based on information and belief, GOTTLIEB also advertises products for sale through RA1 ACCESSORIES on websites such as gunbroker.com, tallahasseegunforum.com, floridaconcealandcarry.com, glocktalk.com, and hipointfirearmforums.com.  Based on information and belief, Defendant GOTTLIEB is also associated with the name "Rudy Moss", and uses numerous email addresses, including mathieumoss@yahoo.com, rudyfinsfan@gmail.com, RA1orders@outlook.com, and Ra1rudy@hotmail.com, in connection with sales related to Defendant RA1 ACCESSORIES.  However, RA1 ACCESSORIES does not appear to be registered with the Florida Department of State, Division of Corporations, as a business entity.

9. The DOE Defendants are individuals or business entities whose true identities and nature are presently unknown to MAGPUL.

10. Together GOTTLIEB, RA1 ACCESSORIES and the DOE Defendants participated with one another, or together conspired, to sell counterfeit Magpul products through online websites, such as gunbroker.com, and eBay.com.  DEFENDANTS used pseudonyms under which they offered counterfeit MAGPUL products for sale, such as "Matt09850", "saigaman555", "Rudy's Tactical4Less", "RudyC9", "RudySightsOnWheels", "Rick305", "Rudy", and "Rudy40".

**FACTUAL ALLEGATIONS RELATING TO TRADEMARK REGISTRATIONS**

11. MAGPUL has developed a strong name and reputation within the trade and among members of the consuming public as a leading manufacturer of firearm-related products and accessories. MAGPUL has invested substantial effort and resources to develop and promote public recognition of the Magpul trade name and of the family of Magpul-related marks. MAGPUL has used the family of Magpul trademarks to identify goods and services as being genuine Magpul products, and the Magpul marks and name are well-recognized emblems of Magpul's high quality products (the Magpul marks and name are hereinafter referred to as the "Magpul Marks").

12. MAGPUL has caused several Magpul Marks to be registered on the Principal Register of the U.S. Patent and Trademark Office ("USPTO") in connection with a range of firearm-related products and accessories. MAGPUL owns all rights, title, and interest in these federal trademark registrations. The registered Magpul Marks ("Registered Marks") include, but are not limited to the following:

| Mark | U.S. Reg. No. | Goods | Reg. Date |
|---|---|---|---|
| MAGPUL | 3381306 | Gun parts; Ammunition magazines and component parts for ammunition magazines; Attachment grips for use with ammunition magazines in Class 13 | Feb. 12, 2008 |
| (logo) | 2338725 | Attachment grips for use with ammunition magazines in Class 13 | Feb. 4, 2000 |
| (logo) | 4054919 | Gun parts; Rifle hand grips in Class 13 | Nov. 15, 2011 |
| MBUS | 3696887 | Firearm sights; Non-telescopic gun sights for firearms in Class 13 | Oct. 13, 2009 |

13. MAGPUL uses the Magpul Marks to distinguish its products from those of other manufacturers. The Magpul Marks have economic value to MAGPUL because its customers rely upon them when deciding to purchase Magpul-branded products. The Magpul Marks are distinctive, having no meaning outside their use by MAGPUL in its course of business operations and in its advertising to distinguish its products and services. MAGPUL uses these marks to advertise through a wide variety of media. As a result, the Magpul Marks have become famous and well known. MAGPUL has expended substantial time, money and other resources developing, advertising and otherwise promoting the Magpul Marks.

14. Because the engineering processes and rigorous testing involved in manufacturing firearm accessories, MAGPUL has invested substantial resources researching and developing the innovative products that bear the Magpul Marks.

15. The Magpul Marks have been used in interstate commerce to identify and distinguish Magpul products for an extended period of time and serve as symbols of Magpul's quality, reputation, and goodwill.

16. As a result of MAGPUL's efforts, members of law enforcement, the United States military and the consuming public readily identify products bearing or sold under the Magpul Marks, as being high quality products manufactured and approved by MAGPUL.

17. Counterfeit products bearing markings similar to the Magpul Marks provide customers with a false assurance that the products they have purchased are reliable and produced according to MAGPUL's high standards for quality, durability and design.

18. In addition to harming customers, counterfeit Magpul products also harm MAGPUL in many ways. Substandard counterfeit Magpul products create a false impression that Magpul products are inferior or unreliable, which tarnishes MAGPUL's reputation and causes it to lose sales and business opportunities. When customers purchase Magpul-branded parts that are unreliable counterfeits, their image of MAGPUL may be diminished and MAGPUL's opportunity to sell genuine, high-quality products to those customers may be lost forever. As a result, MAGPUL suffers substantial and irreparable harm to its brand, image, business, and the public's goodwill, all of which MAGPUL has worked hard to create. MAGPUL also suffers lost sales as the result of customers purchasing counterfeit goods, instead of genuine Magpul products.

## DEFENDANTS' UNLAWFUL ACTS

19. On or about April 29, 2013, MAGPUL began publicizing the "MBUS Pro" as a new product that was planned for later market release. The publications contained detailed photos of the MBUS Pro, which included line drawings of the product and a description of its key features. MAGPUL has design patent applications pending for the MBUS Pro. While the publications described that the MBUS Pro would be offered for sale sometime during the late summer of 2013, MAGPUL has not released this item for sale into the marketplace. MAGPUL has not yet determined when it will release this new product for sale.

20. DEFENDANTS knowingly and willfully advertise, distribute, market, offer for sale and/or sell products designed to look like genuine Magpul products and which bear

counterfeit versions of the Registered Marks, in particular product designed to look like the not-yet-released MBUS Pro products.

21.     At some time, on or before July 22, 2013, DEFENDANTS began promoting and advertising, distributing, selling and/or offering for sale goods in interstate commerce that bear counterfeit and confusingly similar imitations of the Registered Marks, including products being represented as Magpul MBUS Pro sights, through websites, including gunbroker.com and eBay.com.

22.     On July 22, 2013, a MAGPUL employee placed an order with GOTTLIEB, through the gunbroker.com website, for one of the products that GOTTLIEB claimed was a Magpul MBUS Pro.  Later in the afternoon, GOTTLIEB cancelled this sale, informing the purchaser that GOTTLIEB was "not recieving (sic) these sights , as they have not been released by Magpul."  GOTTLIEB went on to claim that he had been "misinformed by a misleading vendor , and appologize (sic) for any inconvience (sic) I may have caused ... (sic) The listing is now removed and the two buyers have been refunded."  GOTTLIEB also requested that the purchaser not leave negative feedback on gunbroker.com as a result of this error.

23.     On July 23, 2013, at 3:42 a.m. E.T., shortly after removing the listings from gunbroker.com that offered to sell the MBUS Pro sights, GOTTLIEB re-posted the listing (Gunbroker.com Listing #: 355828980), now identifying the products offered for sale as "MagPul (sic) PTS MBUS PRO Iron Sights new for 2013."   In verbiage at the end of the listing, GOTTLIEB claimed that: "These are not Magpul USA sights[.]  They are made overseas for Magpul by PTS that has a contract with them (sic)[.]"  (Original in all uppercase

8

letters.)  At some time after initially posting Gunbroker.com Listing # 355828980, Gottlieb changed the title on that listing to remove any reference to PTS and to remove any reference to the product being used for only simulation purposes.  Gottlieb's revised title for Listing # 355828980 stated that the products offered are: "Magpul MBUS PRO STEEL Backup Sights AR-15, KSG G23 FRONT and REAR included, NEW IRON's for 2013."   The PTS reference was relegated to the verbiage at the end of the listing.

24. Significantly, in later listings for this product, GOTTLIEB would not include references to "PTS" in the title of the product description.  On July 25, 2013, at 5:10 a.m. ET (gunbroker.com Auction #: 356221766), and at 1:57 p.m. ET (gunbroker.com Listing # 356324483), and at 11:14 p.m. ET (gunbroker.com Auction #: 356420834), GOTTLIEB again offered Magpul MBUS Pro sights for sale on gunbroker.com.  Each of these listings were identical in that the title of the product description indicated that the product was a Magpul MBUS Pro, and that title did not mention PTS.  In each of these listings, GOTTLIEB claimed that these products were manufactured by PTS in verbiage at the end of the listing, stating that: "These are not Magpul USA sights[.]  They are made overseas for Magpul by PTS that has a contract with them (sic)[.]"  (Original in all uppercase letters.)  The listings also included a claim by GOTTLIEB that MAGPUL had PTS manufacture these products "so they can be sold worldwide without restriction."

25. MAGPUL makes the allegations in this paragraph on information and belief.  GOTTLIEB'S cancellation of the original sales of MAGPUL MBUS Pro sights resulted from his knowledge of wrongdoing.  GOTTLIEB knew, or suspected, that MAGPUL had purchased one of these products due to the shipment address being in a vicinity that is close

to MAGPUL's corporate headquarters. In reaction to that, GOTTLIEB cancelled the sale, claiming that he had been misinformed as to the product release date and that he was unable to obtain the product from his supplier. GOTTLIEB then promptly began selling the very same items that he claimed were unavailable under a different listing that incorrectly claimed the product had been manufactured by PTS Magpul. After a short while, GOTTLIEB changed the listing title to indicate that the products were Magpul products, and claiming a relationship to PTS Magpul only in verbiage at the end of his listing, in order to purposefully lure customers who desired to purchase genuine Magpul MBUS Pro sights. In fact, GOTTLIEB never had any basis by which to believe that the products he was offering for sale had been manufactured by PTS Magpul because neither the products, nor their packaging, had any marks to indicate that they had been manufactured by PTS Magpul. Since GOTTLIEB knew that MAGPUL had not yet released the MBUS Pro for sale, and he knew that PTS Magpul had not manufactured the products, he also knew that the products he was selling were counterfeit, or he was willfully blind to the fact that he was selling counterfeit Magpul products.

26. GOTTLIEB has been notified that products he has offered for sale are likely counterfeit. Using the seller ID "saigaman555" on eBay, GOTTLIEB offered for sale "Magpul" products on at least two prior occasions on eBay. MAGPUL notified eBay through the Verified Rights Owner (VeRO) Program that, based upon a review of the photographs and the listings, the products appeared to be infringing. eBay removed the infringing listings and notified "saigaman555" of MAGPUL's claims that he was selling infringing items. eBay identified "saigaman555" as Matthew Gottlieb.

27. On July 31, 2013, MAGPUL ordered a MBUS Pro that had been advertised for sale on gunbroker.com by GOTTLIEB. On August 2, 2013, MAGPUL received that product from GOTTLIEB. After inspecting that product and its packaging, MAGPUL has determined that it is counterfeit. The product was not manufactured by MAGPUL, nor under its authority. The product and its packaging bear MAGPUL trademarks that are registered with the USPTO and were affixed to the product without MAGPUL'S permission or authority. Among these trademarks are those assigned registration numbers by the USPTO: 2338725, 4054919 and 3696887. The advertisement listing GOTTLIEB posted on gunbroker.com in conjunction with the offering for sale of the counterfeit product also included MAGPUL trademarks that are registered with the USPTO. Among these trademarks are those assigned registration numbers by USPTO: 3381306, 2338725, 4054919 and 3696887.

28. Based upon information and belief, at all times relevant hereto, DEFENDANTS had full knowledge of Plaintiff's respective ownership of Plaintiff's Registered Marks, including their respective, exclusive rights to use such intellectual property and the goodwill associated therewith.

29. DEFENDANTS' use of Plaintiff's respective Registered Marks, including the promotion and advertisement, distribution, sale and offering for sale of counterfeit goods bearing the Registered Marks, is without Plaintiff's consent or authorization.

**FIRST CAUSE OF ACTION**
**(Federal Trademark Infringement Under Section 32 of the Lanham Act,**
**15 U.S.C. § 1114(1)(a))**

30.     MAGPUL incorporates paragraphs 1-29 of this Complaint as if fully set forth herein.

31.     Plaintiff's Registered Marks and the goodwill of the business associated with them are tremendously valuable in the United States and worldwide because they are distinctive and universally associated in the public perception with the highest quality firearm related products and accessories.

32.     DEFENDANTS have used in commerce marks that are identical, and/or confusingly similar, to MAGPUL's Registered Marks, in connection with the sale, offering for sale, distribution, and advertising of firearm related products, in a manner that is likely to cause confusion, mistake, or to deceive.  DEFENDANTS acted without authority in using these Registered Marks.

33.     DEFENDANTS' infringing actions were committed fraudulently, willfully, and in bad faith, with knowledge of MAGPUL's exclusive rights to and goodwill in its Registered Marks, or with willful blindness to the same, and with the intent to cause confusion, to cause mistake and/or to deceive.

34.     As a result of the DEFENDANTS' trademark infringement, MAGPUL has suffered and will continue to suffer substantial and irreparable injury, loss, and damages to its right in and to its Registered Marks, and the goodwill associated therewith, for which it has no adequate remedy at law.

35. Due to the acts of the DEFENDANTS, MAGPUL has suffered and will continue to suffer loss of income, profits, and valuable business opportunities and, if not restrained, DEFENDANTS will have unfairly derived and will continue to unfairly derive income, profits and business opportunities as a result of its acts of infringement.

36. As the acts alleged herein constitute infringement of MAGPUL's Registered Marks under 15 U.S.C. § 1114, and as MAGPUL has no adequate remedy at law, MAGPUL is entitled to injunctive relief as well as monetary damages and other remedies as provided by 15 U.S.C. §§ 1116, 1117, and 1118, including treble damages, reasonable attorneys' fees and prejudgment interest, and/or statutory damages provided by 15 U.S.C. § 1125.

**SECOND CAUSE OF ACTION**
**(False Designation of Origin Under Section 43(a) of the Lanham Act,**
**15 U.S.C. § 1125(a)(1)(A))**

37. MAGPUL incorporates paragraphs 1-36 of this Complaint as if fully set forth herein.

38. The counterfeit goods advertised, offered for sale and/or sold by DEFENDANTS, which bear counterfeit versions of the MAGPUL Registered Marks, are designed to look like genuine Magpul products, in particular product designed to look like the not-yet-released MBUS Pro products. However, DEFENDANTS' products are different and inferior in quality.

39. DEFENDANTS did without authorization make false designations of origin, and false or misleading descriptions of fact, which were and are likely to cause confusion, or to cause mistake, or to deceive customers as to the affiliation, connection, or association of

DEFENDANTS with Plaintiff, and/or as to the origin, sponsorship, or approval of DEFENDANTS' goods or services, or commercial activities

40. DEFENDANTS' acts were committed with knowledge of Plaintiff's exclusive rights and goodwill in the Registered Marks, as well as with bad faith and the intent to cause confusion, mistake and/or to deceive.

41. Plaintiff has suffered and, if the DEFENDANTS are not enjoined from their wrongful acts of passing off and acts of making false designations or origin, false or misleading descriptions of fact, and false or misleading representations of fact as described herein, will continue to suffer, great and irreparable injury, loss, and damages to its rights in and to the Registered Marks and the goodwill associated therewith for which it has no adequate remedy at law.

42. As a result of the DEFENDANTS' wrongful acts, Plaintiff has suffered and will continue to suffer loss of income, profits, and valuable business opportunities and, if not restrained, DEFENDANTS will have unfairly derived and will continue to unfairly derive income, profits and business opportunities as a result of their wrongful acts.

43. As the acts alleged herein violation Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and as Plaintiff has no adequate remedy at law, Plaintiff is entitled to injunctive relief as well as monetary damages, other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, including treble damages, a reasonable attorneys' fee and prejudgment interest, and/or statutory damages provided by 15 U.S.C. § 1125.

## PRAYER FOR RELIEF

MAGPUL, prays for judgment against the DEFENDANTS as follows:

1.  For Statutory Damages in the First and Second Causes of Action (Trademark Infringement, 15 U.S.C. § 1114, and; False Designation of Origin, 15 U.S.C. § 1125(a)(1)(A)):

    A.  In the amount of $4,000,000, representing $2,000,000 per counterfeited mark by each Defendant, as provided by 15 U.S.C. § 1117(c) for DEFENDANTS' willful misuse of the Registered Marks described in this Complaint (USPTO Registration numbers: 4054919 and 3696887).

    B.  For DEFENDANTS' misuse of any other Registered Mark, in an amount as determined after trial;

2.  For pre-judgment interest;

3.  For reasonable attorneys' fees and costs and such other and additional relief as the court deems equitable including, but not limited to, any relief set forth in Section 34 through 49 of the Lanham Act;

4.  Preliminary and Permanent Injunctive Relief enjoining DEFENDANTS and their agents, servants, employees, representatives, successors, assigns, and those persons in active concert or participation with them from: (1) using the Magpul Marks in connection with the sale of any unauthorized goods; (2) infringing upon the Magpul Marks; (3) unfairly competing with MAGPUL; (4) falsely representing themselves as being connected with MAGPUL; (5) using any reproduction, counterfeit, copy or colorable imitation of the Magpul Marks in connection with publicity, promotion, or sale of goods; (6) affixing,

applying, annexing, or using in connection with the sale of any goods, a false description or representation that describe or represent such goods as being those of MAGPUL, and; (7) from selling any products that are represented to be, or represented to have any similarity to, MAGPUL's MBUS Pro.

5. That DEFENDANTS be Ordered to destroy any products or materials that infringe upon the Magpul Marks;

6. That DEFENDANTS be required to account to Plaintiffs for all profits and damages resulting from Defendants' infringing activities;

7. For an Order that Defendants' assets held by or within the control of any entities subject to the jurisdiction of this Court be frozen and restrained pending the outcome of this action in order to preserve Plaintiff's rights to the damages set forth in this Complaint;

8. For such other and further relief as the Court deems just and proper.

DATED: August 8, 2013

        Respectfully submitted,

        By:  /s/ *Brian E. Mitchell*
            Brian E. Mitchell

        Brian E. Mitchell
        (Fla. Bar No. 6422975)
        MITCHELL + COMPANY
        4 Embarcadero Center, Suite 1400
        San Francisco, CA 94111
        Telephone:   (415) 766-3515
        Facsimile:    (415) 402-0058
        Email:brian.mitchell@mcolawoffices.com

        Attorneys for Plaintiff
        MAGPUL INDUSTRIES CORP

7758-4\1818889v10